UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALICIA BOYKIN,<br><br>                 Plaintiff,<br>v.<br><br>PINE VALLEY CENTER, LLC,<br><br>                 Defendant. | **Docket No.**<br><br>**COMPLAINT** |

Plaintiff Alicia Boykin ("Boykin" or "Plaintiff"), by her undersigned counsel, alleges the following which is based on Boykin's personal knowledge and the investigation of counsel.

## NATURE OF THE ACTION

1. Boykin brings this action because Defendant Pine Valley Center, LLC ("Pine Valley") and specifically Yehudah Serle ("Serle"), who is (or was at all relevant times) the Administrator and Corporate Compliance Officer of the facility owned by Pine Valley where Boykin worked, sexually harassed Boykin and discriminated against Boykin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000c, *et seq.* and the New York State Human Rights Law, N.Y. Exec. L. §§290, *et seq.*, while she was employed at the nursing and rehabilitation center owned by Pine Valley, called the Pine Valley Center for Rehabilitation and Nursing.

1

2. Boykin endured Serle's unwelcome sexual advances and comments over years of employment and until just before her employment ended.

3. This action is also brought under Chapter 1, Title 8, §§8-107(1)(a) and 8-107(7) of the Administrative Code of the City of New York (the "New York State Human Rights Law" or "NYHRL") for unlawful sexual harassment.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331, in that certain of Plaintiff's claims arise under the laws of the United States, namely Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e-2 *et seq.*, as amended ("Title VII") and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. §1981 ("§1981").

5. The Court has supplemental jurisdiction over claims brought under state law, Chapter 18, Article 15 of the New York State Executive Law §296(1)(a), pursuant to 28 U.S.C. §1367.

6. Venue is proper in this District under 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §1391(b) because Defendant's place of business where Plaintiff worked is located within the Southern District of New York, and the events giving rise to Plaintiff's claims occurred in the Southern District of New York, including all of the sexual harassment Plaintiff endured from Serle.

## PROCEDURAL PREREQUISITES

7. Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action because Plaintiff (a) timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 8, 2021; (b) received a Notice of Right to Sue from the EEOC on June 30, 2021; (c) commenced this action within 90 days of the issuance

of the Notice of Right to Sue by the EEOC. A copy of the Notice of Right to Sue is annexed hereto as Exhibit A.

## PARTIES

8. At all times relevant hereto, Plaintiff Alicia Boykin ("Boykin") was employed by Pine Valley.

9. At all times relevant hereto, Pine Valley was and is a business corporation duly organized and existing under the laws of the State of New York and is registered and authorized to do business in the County of Rockland, State of New York, where it owns and operates the Pine Valley Center for Rehabilitation and Nursing, where Boykin worked.

## SUBSTANTIVE ALLEGATIONS

10. Boykin was employed by Pine Valley and its predecessors for over twenty (20) years, including for the past 12 years as the Director of Recreation and Volunteer Services of the facility.

11. At all relevant times, Serle was the highest-ranking officer in terms of day-to-day operations at the facility where Boykin worked.

12. Boykin first became the target of unwelcome sexual harassment from Serle in or around 2017 and until her employment ended Serle targeted Boykin in at least the following unwelcome and sexual ways:

   a. In or around December 2017 at the Pine Valley holiday party, Serle asked Boykin to have a glass of alcohol and when she replied that she would rather not, he told her that she needed to **"loosen up"** in a suggestive and unwelcome manner;

b. On February 18, 2018, **when Boykin asked Serle by text message whether he needed me that morning, he responded "I always need you,"** which made Boykin extremely uncomfortable;

c. On May 8, 2018, Serle texting Boykin **"I miss you, we haven't schmoozed in a while,"** which was completely out of the blue and very unwelcome;

d. Less than one week later, on May 14, 2018, when Boykin reminded Serle by text message that the Staff Pajama Day was the following day, Serle text messaged Boykin back saying **"Do you want to know what I wear to bed?",** which was completely unwelcome and made Boykin feel vulnerable and degraded, and Boykin immediately replied back "On that note, forget it!" as a means to shut down the conversation and express that his comment was not welcome;

e. In or around early May 2019, when I was helping cook breakfast at the facility for the celebration in honor of nurses for National Nurses Week, Serle told Boykin that **"cooking a meal looks good on you,"** which made Boykin feel degraded;

f. **In June 2019, Serle brushed his arm across Boykin's breast** while walking by her, and immediately afterwards, when it appeared that he had stopped to offer an apology, **he added that "[his] wife likes it when [he does] that"**;

g. In July 2020, when Boykin returned from vacation, **Serle summoned Boykin to his office to tell her that "[she] was missed" and then inappropriately remarked about how her dress looked on her**, which was so upsetting that Boykin raised the issue with a coworker;

      h.   On October 14, 2020, Serle asked Boykin to record her voice for automated calls to family members of patients because her voice is "captivating," a remark Serle made in such a suggestive and unwelcome manner that she immediately walked away from him and the conversation; and

      i.   On October 30, 2020, when the staff was dressed up in Halloween costumes, and Boykin dressed up as a Teenage Mutant Ninja Turtle, and **Serle came up from behind Boykin and asked if he could "rub [her] shell,"** which was degrading and then, in front of two coworkers, **Serle also reached out to squeeze her nose through her face mask**, which Boykin only avoided by move away just before he touched her nose, which was so alarming to Boykin's coworkers that they even asked her what Serle's behavior was about.

The above are merely examples of the sexual harassment and gender discrimination that Boykin endured from Serle, which was severe and/or pervasive and so altered Boykin's workplace as to create a hostile work environment.

13.    There was no one to complain to about the sexual harassment Boykin endured at the facility because, in addition to running the day-to-day operations of the facility where Boykin worked, Serle was also the "Corporate Compliance Officer" and therefore the person assigned to handle these types of complaints.

14.    Pine Valley's work environment also reflected its shortcomings in creating and maintaining a diverse, equitable, and inclusive workplace as, only by way of example, during Boykin's employment Pine Valley: replaced non-White staff and managers it inherited from its predecessors with almost exclusively White staff, gave increases in pay predominantly to its White

managerial staff and not its non-White managerial staff and ignored or diminished and humiliated non-White staff who complained about this treatment.

15. For example, Serle individually degraded Boykin on the basis of her race by requiring Boykin to attend a meeting where Serle discussed why other non-White managers were not receiving a raise after they, but not Boykin, complained that only White peers had received an increase in pay.

16. When Boykin complained that Serle had included her in this meeting for no other reason than because she was also not White, Serle chastised her in front of her non-White managerial peers for bringing up her race and that the decision to include her in the meeting and stating, in part that these decisions could not be about their race or her race "because he had a Black camp counselor" in his childhood once, as if that experience demonstrated that he could not be racist or treat non-White employees, including Boykin, in a degrading way because of their race, when obviously especially after this remark made the opposite feel true, and which was itself a deeply upsetting and hostile remark.

17. The cumulative effect of all this unwelcome and degrading treatment took an emotional toll on Boykin, so that on November 10, 2020, when Boykin was accused by Serle of falsely punching in her husband's timecard (her husband also worked at the facility) and was suspended pending an "investigation" into his allegation, Boykin had had enough of this treatment.

18. The following day, Boykin wrote to Serle and the owner of the facility, Ephraim Steif, and said "I am resigning from my position as Director of Recreation and Volunteer Services effective immediately due to race and gender discrimination, sexual inappropriate behavior….I no longer feel comfortable working in a mentally unhealthy and toxic environment. I feel that I am being discriminated against because of my race and gender. I have dealt with unreported sexually

inappropriate behavior for fear of job loss and retaliation, also creating a mentally unhealthy environment."

19. Rather than investigate her claims, or ask for specifics in any respect, Serle wrote back to Boykin that my resignation was not accepted, and instead Boykin was "terminated effective immediately," which was yet another effort to degrade and humiliate her.

20. Serle did not need to receive a complaint about his own actions since Boykin communicated through her words and actions that his sexually predatory remarks were entirely unwelcome to her.

21. Subsequently, Boykin was told by some former colleagues that Serle had addressed the entire staff to discuss the end of her employment with Defendant.

22. Serle reportedly told the entire staff, including some people Boykin had worked with for a decade or more, that she had left "because [Boykin] was under investigation for a matter [he] could not discuss with [them]" and that "everything in [Boykin's] office was incriminating evidence against [her]" so no one could go into my office and "no one was to contact me."

23. Just learning that Boykin had been made to appear no better than a criminal to her colleagues and friends after her departure was traumatic and deeply upsetting.

24. In the twenty (20) years Boykin worked at the facility owned by Pine Valley, she was not once was written up for an infraction or disciplined in any way and her performance reviews were always positive, until she was suspended in November 2020.

25. As a result of Defendant's discriminatory conduct, Boykin has suffered the adverse effects of sexual harassment and race discrimination and the quality of her life, self-esteem and self-respect have been impacted, all of which will continue and remain a source of humiliation, anguish and financial loss to Boykin.

26. Here, the acts of Defendants were so egregious and were done so clearly in the face of a perceived risk that its actions would violate Boykin's protected rights under the law, that, in addition to all the damages inflicted upon Boykin and in additional to all the measure of relief to which Boykin may be properly entitled to herein, Defendants should also be required to pay punitive damages as punishment for its discriminatory conduct, in order to deter Defendant and others similarly situated from engaging in such conduct in the future.

## AS AND FOR A FIRST CAUSE OF ACTION
### Title VII: Sex Discrimination

27. Boykin reincorporates and readopts all allegations contained within this Complaint, as if fully set forth here.

28. Boykin was subjected to a pattern and practice of continuous, unwelcome, humiliating and reprehensible sexual harassment by a member of senior management of Defendant, the effect of which severely or pervasively altered§ the terms, conditions and privileges of Boykin's employment.

29. Defendant created and allowed a work environment Boykin reasonably perceived to be hostile and which would be perceived as hostile by any reasonable person, which is properly imputed to Defendant.

30. As a proximate result of Defendant's conduct, Boykin has been adversely affected in her employment and in her normal life's pursuits, and Boykin believes that the injuries she incurred by being subjected to Defendant's conduct complained of herein has and will continue to have a materially negative impact upon her career, as well as the quality of her life.

31.     Boykin was caused to suffer injuries resulting in the emotional anguish and suffering, and has been humiliated, demeaned and otherwise intimidated and degraded because of Defendant's outrageous conduct in violation of Boykin's human rights, all of which impacted her well-being and the quality of her life.

32.     The aforementioned acts of Defendant constitute unlawful discrimination on the basis of sex against Boykin in violation of Title VII, which provides, *inter alia* that:

> It shall be an unlawful employment practice for an employer… to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

33.     As a direct and proximate result of Defendant's Title VII violation, Defendant is liable to Boykin for damages, including punitive damages, as well as reasonable attorneys' fees, pre-judgment interest and costs.

34.     Here, the acts of Defendant were so egregious and were done with such malice, bad faith and/or reckless indifference for Boykin's protected rights under Title VII, that, in addition to all the damages inflicted upon Boykin and in addition to all the measures of relief to which Boykin may properly be entitled herein, Defendant should also be required to pay punitive damages as punishment for its discriminatory conduct, in order to deter Defendant and others similarly situated from engaging in such conduct in the future.

35.     Boykin, therefore, seeks compensatory damages in this cause of action, including, among other things, for loss of earnings and loss of earning capacity and for the emotional harm inflicted upon her, in an award to be determined at trial of this matter, as well as punitive damages, reasonable attorneys' fees, costs and pre-judgment interest.

## AS AND FOR A SECOND CAUSE OF ACTION
### Section 1981: Race Discrimination

36. Boykin reincorporates and readopts all allegations contained within this Complaint, as if fully set forth here.

37. By the acts and practices alleged herein, Pine Valley discriminated against Boykin in the terms and conditions of her employment on the basis of her race in violation of §1981.

38. Pine Valley know that its actions constituted unlawful discrimination and/or acted with malice or reckless disregard for Boykin's statutorily protected rights.

39. The aforementioned acts of Pine Valley constitute unlawful discrimination on the basis of sex against Boykin in violation of §1981, which provides, *inter alia* that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of the persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

40. As a direct and proximate result of Defendant's violation of §1981, Defendant is liable to Boykin for damages, in an amount to be determined at trial, as well as reasonable attorneys' fees, pre-judgment interest and costs.

41. Here, the acts of Defendant were so egregious and were done with such bad faith and/or reckless indifference for Boykin's protected rights under §1981, that, in addition to all the damages inflicted upon Boykin and in addition to all the measures of relief to which Boykin may properly be entitled herein, Pine Valley should also be required to pay punitive damages as punishment for its discriminatory conduct, in order to deter Defendant and others similarly situated from engaging in such conduct in the future.

42. Boykin, therefore, seeks compensatory damages in this cause of action, including, among other things, for loss of earnings and loss of earning capacity and for the emotional harm inflicted upon her, in an award to be determined at trial of this matter, as well as punitive damages, reasonable attorneys' fees, costs and pre-judgment interest.

**AS AND FOR A THIRD CAUSE OF ACTION**
**NYSHRL: Sex and Race Discrimination**

43. Plaintiff reincorporates and readopts all allegations contained within this Complaint, as if fully set forth here.

44. The entirety of the acts which constitute and form this cause of action, as set forth herein were perpetrated on Boykin while she was int eh court of her employment with Defendant.

45. Boykin was subjected to a pattern and practice of continuous, unwelcome, humiliating and reprehensible sexual harassment by a member of senior management of Defendant, the effect of which severely or pervasively altered§ the terms, conditions and privileges of Boykin's employment.

46. Defendant created and allowed a work environment Boykin reasonably perceived to be hostile and which would be perceived as hostile by any reasonable person, which is properly imputed to Defendant.

47. As a proximate result of Defendant's conduct, Boykin has been adversely affected in her employment and in her normal life's pursuits, and Boykin believes that the injuries she incurred by being subjected to Defendant's conduct complained of herein has and will continue to have a materially negative impact upon her career, as well as the quality of her life.

48. Boykin was caused to suffer injuries resulting in the emotional anguish and suffering, and has been humiliated, demeaned and otherwise intimidated and degraded because of

Defendant's outrageous conduct in violation of Boykin's human rights, all of which impacted her well-being and the quality of her life.

49. The aforementioned acts of Defendant constitute unlawful discrimination on the basis of sex against Boykin in violation of the New York State Human Rights Law, which provides, *inter alia* that:

> It shall be an unlawful discriminatory practice: (a) For an employer…because of the…race…sex…of any individual…to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

50. As a direct and proximate result of Defendant's violations of the New York State Human Rights Law, Boykin was adversely affected in her employment, and did and continues to suffer in her life's pursuits, and she believes that the injuries inflicted upon her as a result of Defendant's discriminatory conduct did and will continue to have a negative impact upon the quality of her life and career, and will prevent her from functioning as she did prior to the conduct complained of herein, all of which Boykin alleges to be in the amount of Three Million Dollars ($3,000,000), as well as reasonable attorneys' fees pursuant to §297(10), and pre-judgment interest and costs.

**WHEREFORE**, Plaintiff demands judgment against Defendant on the First Cause of Action in an award to be determined at a trial of this matter; on the Second Cause of Action in an award to be determined at a trial of this matte; and on the Third Cause of Action, an award in the sum of Three Million Dollars ($3,000,000) in compensatory damages, plus attorney's fees, pre-judgment interest and the costs of this action as is permitted under the law; and for such other and further relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: September 27, 2021

                                      **KOVEL LAW PLLC**

                                      By: *s/ Daniel H. Kovel*
                                      Daniel H. Kovel, Esq. (DK6676)
                                      301 East 79th Street, #18A
                                      New York, New York 10075
                                      Telephone: (646) 397-1729
                                      dkovel@kovel-law.com

                                      *Attorneys for Plaintiff*

# EXHIBIT A

EEOC Form 161 (11/2020)   **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Alicia Boykin<br>C/O Kovel Pllc<br>301 E. 79th Street, #18A<br>New York, NY 10075 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2021-03415 | Gwendolyn D. Hoy, Investigator | (929) 506-5313 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Gwendolyn D Hoy* Digitally signed by Gwendolyn D Hoy
Date: 2021.06.30 20:07:12 -04'00'

Enclosures(s)    **Judy A. Keenan, District Director**    *(Date Issued)*

cc:
PINE VALLEY CENTER, LLC D/B/A PINE VALLEY CTR (REHAB & NURS)
1 Hillcrest Center Drive
Suite 325
Spring Valley, NY 10977

Daniel H. Kovel, Esq.
KOVEL LAW PLLC
301 E. 79th Street
#18A
New York, NY 10075

Enclosure with EEOC
Form 161 (11/2020)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* **to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

Enclosures(s)

cc: **Dawn J. Lanouette**
**Hinman, Howard and Kattell, LLP**
**PO Box 5250**
**Binghamton, NY 13902**